United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN XAVIER GEORGE ANAYA,
Plaintiff,
v.
COUNTY OF NAPA, et al.,
Defendants.

Case No. 26-cv-07988-TSH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)**

Re: Dkt. No. 20

## I. INTRODUCTION

Plaintiff John Xavier George Anaya, who is self-represented, brings this action against defendants County of Napa, Cristene Campana-Briceno,[1] Susan B. Altman, Sheryl L. Bratton, Alfredo Larranaga, Rebecca Craig, Alexysus Vosmeier, Veronica Piper Jefferson, Jennifer Yasamoto, Amy Medina, Alejandro Quiroz (collectively, the "County Defendants"), and Robert Fleshman, alleging defendants violated Anaya's civil rights and impeded his access to public services in Napa County. ECF No. 1. Pending before the Court is the County Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] ECF No. 20 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the November 19, 2026, hearing. For the reasons stated below, the Court **GRANTS** the motion.[3]

[1] Cristene Campana-Briceno is erroneously sued as Christine Briseno. Mot. at 1.

[2] Defendant Fleshman filed a separate motion to dismiss. *See* ECF No. 18. The Court addresses Fleshman's motion in a separate order.

[3] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 4, 8, 12.

## II. BACKGROUND

### A. Factual Background

Anaya, a resident of Virginia, is a disabled veteran with PTSD and related neurological and communication limitations that affect his ability to interact effectively in high-stress settings. First Am. Compl. ("FAC") ¶¶ 7, 19. Overall, Anaya alleges that defendants violated his civil rights by (1) "report routing" and "alleged dissemination" concerning a report Anaya made to Napa County Child Welfare Services ("CWS"); (2) "security-binder practices, County service-access restrictions," and "continuing administrative barriers" related to a workplace-violence restraining order obtained against Anaya by Napa County; and (3) "disability-grievance handling" related to Anaya's American with Disabilities Act ("ADA") complaint. *Id.* ¶¶ 1–14, 33–49.

Defendant Napa County is a California public entity that operates County programs, services, and activities, including CWS, Health and Human Services Agency ("HHSA"), and the County ADA grievance process. *Id.* ¶ 20. Defendant Larranaga is a County Safety Officer and ADA Coordinator. *Id.* ¶ 21. Defendant Campana-Briceno is a County Human Resources Official. *Id.* ¶ 22. Defendant Altman is Deputy County Counsel. *Id.* ¶ 23. Defendant Bratton is County Counsel. *Id.* ¶ 24. Defendant Craig is Assistant County Executive Officer. *Id.* ¶ 25. Defendant Vosmeier is a CWS supervisory official. *Id.* ¶ 26. Defendant Jefferson is a CWS Director. *Id.* ¶ 27. Defendant Yasamoto is an HHSA official. *Id.* ¶ 28. Defendant Medina is a County Executive Office employee. *Id.* ¶ 29. Defendant Quiroz is an HHSA Eligibility Supervisor. *Id.* ¶ 30. And Defendant Fleshman is the Court Executive Officer for the Superior Court of California, County of Napa. *Id.* ¶ 31.

#### 1. CWS Report

Anaya alleges the following in the FAC. On August 21, 2021, Anaya filed a report with Napa County CWS concerning his son and his wife, Jessica Marie Lopez Anaya ("Lopez Anaya"), who is a CWS employee. *Id.* ¶ 33. Anaya "sought help, intervention, and a conflict-aware review before he filed for divorce," but he was not provided with a "neutral CWS process." *Id.* ¶¶ 33–34. Anaya had concerns about risks to his minor son's safety. *Id.* ¶ 1. Anaya filed for divorce from Lopez Anaya in March 2022. *Id.* ¶ 2.

Because Napa County had "an institutional incentive to minimize or recharacterize a report involving a County CWS employee," County personnel routed Anaya's CWS report "through internal County and HR channels." *Id.* ¶¶ 3, 5. As a senior HR official, Campana-Briceno "had a direct institutional interest in employee-related matters" and received notice of Anaya's CWS report. *Id.* ¶ 6. In addition, Jefferson received notice of Anaya's "request for a neutral handling path concerning a report involving a County employee." *Id.* ¶ 27.

On February 22, 2023, County official Ximena Espinosa emailed Anaya stating that "she had been directed to deliver additional information to HR because HR was handling the case," and directed Anaya to contact Campana-Briceno. *Id.* ¶ 35. Anaya emailed evidence pertaining to his CWS report to Campana-Briceno the following day. *Id.* On May 30, 2023, Medina forwarded Anaya's report to Espinosa, wrote that HR was familiar with Anaya, and told Espinosa, "please do not do anything." *Id.* ¶ 36. In that email chain, Campana-Briceno "said she had no idea what the report was and that there was no context." *Id.*

On January 8, 2024, Anaya asked to speak with an HHSA director or deputy director regarding his child's safety. *Id.* ¶ 37. The next day, Quiroz told Vosmeier about Anaya's request and forwarded the communication to Lopez Anaya. *Id.* Quiroz and Vosmeier thus transmitted "child-safety information to [Anaya's] spouse rather than a neutral confidential channel, increasing a specific risk." *Id.* ¶ 70. Through her role at HHSA, Yasamoto also "received requests concerning [Anaya's] child-safety reporting and administrative oversight." *Id.* ¶ 28. Lopez Anaya filed for a domestic violence restraining order on February 27, 2024. *Id.* ¶ 2.

On July 29, 2024, Altman emailed Craig stating that the County Executive Office and HR could not assist Anaya, and that the County intended to file a temporary restraining order ("TRO") and "it will get worse before it gets better." *Id.* ¶ 38.

**2. Restraining Order**

Anaya alleges the following in the FAC. On July 31, 2024, Napa County filed a workplace-violence petition under California Code of Civil Procedure § 527.8. *Id.* ¶ 39. In support of this petition, Campana-Briceno submitted a sworn declaration that contained false or misleading statements and omissions. *Id.* Altman advised the County regarding the petition, and

Bratton supervised "relevant litigation or disclosure decisions." *Id.* ¶¶ 23–24.

The same day it filed the petition, Napa County obtained a TRO against Anaya that "imposed particular no-contact, workplace, and distance restrictions; identified the County Administration Building as the protected employee's workplace; stated [Anaya] could contact Larranaga if he had County business; and directed entry of the order into CARPOS through CLETS." *Id.* ¶ 40. The TRO did not permit an escort or authorize County employees to modify conditions of the TRO. *Id.* ¶ 41. County personnel did not provide a written protocol for alternatives to accessing County services. *Id.*

After the TRO issued, the County security binder contained Anaya's photograph and an instruction to notify the safety officer if Anaya appeared on County property. *Id.* ¶ 42. The TRO, "combined with later security-binder and access practices, caused distinct harms to service access, transportation work, and [Anaya's] ongoing fear of an alleged violation or arrest." *Id.* ¶ 40. Anaya "operated a transportation and client-service business requiring routine travel through downtown Napa and client-selected stops near County locations." *Id.* ¶ 46. Because the County did not issue written guidance on how to handle these public encounters, Anaya had "to decline/ cancel assignments and alter routes." *Id.*

### 3. ADA Complaint

Anaya alleges the following in the FAC. On September 23, 2024, Anaya filed an ADA grievance regarding access to County services. *Id.* ¶ 43. On September 30, 2024, Anaya delivered a County tort claim. *Id.* ¶ 47. On October 1, 2024, Craig sent a copy of the claim to Fleshman and Altman. *Id.*

Following a virtual meeting on October 9, 2024, Larranaga issued a written response on October 25, 2024, stating that Anaya raised access to County buildings and services; describing phone, mail, and online options; providing contacts for County services; and stating that Anaya had not been denied access because of PTSD. *Id.* ¶ 43. The "stated alternatives were not meaningful or equally effective for the services [Anaya] required" because "generic phone, mail, online, designated-contact, or escort proposals did not provide" a confidential and safe process for CWS reporting. *Id.* ¶ 44. And an escort-only condition would force Anaya "to structure routine



United States District Court
Northern District of California

service access, appointments, work activity, and daily life around County personnel's availability, willingness, scheduling, and discretion." *Id.* ¶ 10. As such, the County "denied meaningful access or failed to provide an effective reasonable modification" to permit Anaya to access County services. *Id.* ¶ 54.

On October 29, 2024, Anaya submitted an MC-410 accommodation request for audio and video recording due to his PTSD and related challenges. *Id.* ¶ 48. Fleshman responded on October 30, 2024, stating that "the court did not provide audio/video recording services and referred to court-reporter procedures." *Id.*

Anaya "gave the County notice of disability-related access needs through communications, service-access requests, the ADA grievance, and the October 2024 meeting." *Id.* ¶ 53. The County failed to provide access to services because of Anaya's disability; at a minimum, "the County acted with deliberate indifference after actual notice that accessible, reliable, and safe procedures were required." *Id.* at 17.

Anaya seeks injunctive relief "for present/future County access procedures"; he faces "ongoing irreparable injury because he remains blocked from or materially burdened in obtaining" public services in Napa County, including those from CWS, HHSA, County mental-health, and Veteran-related services. *Id.* ¶¶ 80–81.

**B. Procedural Background**

On July 31, 2026, Anaya filed this action against defendants County of Napa, Cristene Campana-Briceno, Susan B. Altman, Sheryl L. Bratton, Alfredo Larranaga, Rebecca Craig, Alexysus Vosmeier, Veronica Piper Jefferson, Jennifer Yasamoto, Amy Medina, Alejandro Quiroz, and Robert Fleshman. ECF No. 1 ("Compl."). In his Complaint, Anaya alleged six causes of action: (1) First Amendment Retaliation (42 U.S.C. § 1983); (2) Conspiracy (42 U.S.C. §§ 1983, 1985); (3) Title II ADA, County Building Access (42 U.S.C. § 12132); (4) Stigma-Plus Due Process (42 U.S.C. § 1983); (5) Municipal Liability (Monell), County of Napa; and (6) State-Created Danger (42 U.S.C. § 1983). Compl. ¶¶ 78–99.

On September 14, 2026, Anaya filed the operative First Amended Complaint ("FAC") against the same defendants. ECF No. 13-1. Anaya alleges eight causes of action: (1) Title II

ADA: County Services and Meaningful Access; (2) ADA Retaliation and Interference (42 U.S.C. § 12203); (3) First Amendment Retaliation (42 U.S.C. § 1983); (4) Stigma-Plus Procedural Due Process (42 U.S.C. § 1983); (5) State-Created Danger (42 U.S.C. § 1983); (6) Municipal Liability Against County of Napa (42 U.S.C. § 1983); (7) Conspiracy (42 U.S.C. § 1983); and (8) Section 504 of the Rehabilitation Act (29 U.S.C. § 794) (Against County of Napa). FAC ¶¶ 50–78. Anaya seeks, *inter alia*, a declaratory judgment, injunctive relief, and damages. *Id.* at 18.

On October 9, 2026, the County Defendants filed the instant Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 20 ("Mot."). On October 23, 2026, Anaya filed an Opposition and alternative motion for leave to amend. ECF No. 21-2 ("Opp."). On October 28, 2026, Anaya filed a motion for leave to file an amended complaint. ECF No. 23. On October 29, 2026, the County Defendants filed a Reply to Anaya's Motion to Dismiss. ECF No. 27 ("Reply").

## III. LEGAL STANDARD

### A. 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (cleaned up); *accord Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. Lack of Article III standing is properly raised in a Rule 12(b)(1) motion. *Iten v. Los Angeles*, 81 F.4th 979, 985 (9th Cir. 2023). The party asserting federal subject matter jurisdiction must establish standing by a preponderance of the evidence. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction,

accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *Id.*; *see Gordon v. United States*, 739 F. App'x 408, 411 (9th Cir. 2018) (explaining that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction") (cleaned up). To overcome a factual challenge, a plaintiff must "support their jurisdictional allegations with competent proof." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (cleaned up). Further, dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B. 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*,

551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV. DISCUSSION

The County Defendants move to dismiss all claims against them for lack of standing and failing to state a cognizable claim.[4] Mot. at 1. Anaya requests the Court deny the County Defendants' Motion "to the extent the operative allegations state a claim, consideration of the accompanying request for judicial notice and claim-specific equitable tolling, and, alternatively,

[4] In the FAC, Anaya alleges Claims 6 (Municipal Liability) and 8 (Section 504 of the Rehabilitation Act) against only the County of Napa. FAC at 14–15. For the purposes of this Motion, the Court assumes that Claims 1–5 and 7 are alleged against all County Defendants.

leave under Rule 15(a)(2) to file a complete Second Amended Complaint."[5] Opp. at 6:1–6.

In sum, the Court concludes that Anaya lacks Article III standing to pursue injunctive relief against the County Defendants. The Court further concludes that Anaya fails to plead a cognizable claim against any County Defendant. Therefore, dismissal of Claims 1–5 and 7 against all County Defendants and dismissal of Claims 6 and 8 against Napa County is warranted.

### A. Standing For Injunctive Relief

Anaya seeks preliminary injunctive relief "only for present/future County access procedures" in the form of ordering Napa County to "provide a written lawful plan for each affected County service." FAC ¶¶ 79–86. The County Defendants argue that Anaya lacks Article III standing to seek prospective injunctive relief. Mot. at 11:20–12:2. The Court must address this argument before reaching the County Defendants' other arguments on the merits of Anaya's claims. *See, e.g., NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("Standing is the threshold issue in any suit.").

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "For injunctive relief, which is a prospective remedy, the threat of injury must be actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (cleaned up).

---

[5] In his Opposition, Anaya references a "separate judicial-notice request [that] specifies the limited procedural purposes" of a record from federal court. Opp. at 7:15–21. The Court cannot find a separate request for judicial notice in Anaya's filing, but it appears that Anaya requests the Court take judicial notice of an opinion from the Eastern District of Virginia in a case where Anaya is the plaintiff. *Id.*; *see Anaya v. Cnty. of Napa*, No. 3:25-cv-255(RCY), 2026 WL 736765 (E.D. Va. Mar. 16, 2026), *aff'd*, No. 26-1415, 2026 WL 2922937 (4th Cir. Sept. 29, 2026). The Federal Rules of Evidence allow the Court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). As such, courts may take judicial notice of documents filed in a court proceeding. *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER."); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting court may take judicial notice of "documents on file in federal or state courts"). Therefore, the Court takes judicial notice of the existence of the opinion from the Eastern District of Virginia; however, the Court does not take notice of the document "for the truth of the matter asserted therein." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010).

Here, the Court finds that Anaya lacks standing to seek injunctive relief. Anaya alleges that he resides in Virgina and suffers irreparable harm "because he remains blocked from or materially burdened in obtaining" public services in Napa County. FAC ¶¶ 19, 81. He further alleges that he "will identify, through declaration and discovery, the most recent access attempt, responsible office, service needed, response, modification requested, and concrete resulting injury for each barrier." *Id.* ¶ 45. The County Defendants argue that Anaya does not identify a real and immediate threat of future injury because he "identifies no pending request, no planned return, and no current denial." Mot. at 11:20–12:2. Anaya contends that his residence in Virgina does not "extinguish an actual remote request for Napa County services," and that he "alleges continuing needs for CWS reporting, HHSA access, and written communication." Opp. at 24:24–25:27. But Anaya does not allege that Napa County's TRO—obtained under California Code of Civil Procedure § 527.8 over two years ago—currently prohibits him from accessing County services. FAC ¶ 39; *see* Cal. Code Civ. Pro. § 527.8 (limiting TRO to twenty-five-day maximum "unless otherwise modified or terminated by the court"). Nor does he allege that the County restricted his ability to access County services in *any* modality; instead, Anaya alleges that the TRO imposes restrictions on his physical presence in the County Administration Building and that the County offered alternative methods of accessing services. FAC ¶¶ 40, 43. In short, Anaya does not allege facts showing that he is subject to and harmed by a physical access restriction in Napa County given his residence across the country. Therefore, Anaya fails to plausibly plead threat of an actual and imminent injury necessary for Article III standing.

Accordingly, the Court **GRANTS** the County Defendants' motion to dismiss Anaya's claims for injunctive relief under Rule 12(b)(1).

### B. Sufficiency Of Claims

Anaya brings Claims 1 (Title II ADA: County Services and Meaningful Access), 2 (ADA Retaliation and Interference), 3 (First Amendment Retaliation), 4 (Stigma-Plus Procedural Due Process), 5 (State-Created Danger), and 7 (Conspiracy) against all County Defendants. FAC at 12–15. The County Defendants argue that Anaya's claims fail because (1) they do not comply with pleading standards under Federal Rule of Civil Procedure 8; and (2) they do not allege



United States District Court
Northern District of California

sufficient facts to support a cognizable claim under Federal Rule of Civil Procedure 12(b)(6). Mot. at 1:3–2:20.

Here, as discussed below, the Court concludes that Claims 2–5 and 7 fail to comply with Federal Rule of Civil Procedure 8 as alleged against any County Defendant, and that Claim 1 fails to comply with Rule 8 as to all County Defendants except Napa County. The Court further concludes that Claim 1 is not cognizable as alleged against Napa County.

Accordingly, the Court **GRANTS** the County Defendants' motion to dismiss Claims 1–5 and 7 against all County Defendants under Rule 12(b)(6).

**1. Claims Against All County Defendants (Claims 1–5 And 7)**

The County Defendants argue that Claims 1–5 and 7 (1) fail under Rule 8 because they do not allege actionable conduct by most individual defendants; and (2) fail on their own elements. Mot. at 1:3–2:2, 5:2–6:14.

**a. Rule 8**

To comply with Rule 8, a complaint need not provide detailed factual allegations, but it is "a plaintiff's obligation to provide the grounds of his entitlement to relief." *Twombly*, 550 U.S. at 555 (cleaned up). A plaintiff must do more than assert "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, the plaintiff must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

The Ninth Circuit has held that "shotgun pleadings," where "a party indiscriminately incorporates assertions from one count to another," can serve as a basis for dismissal under Rule 8. *Gibson v. City of Portland*, 165 F.4th 1265, 1288–90 (9th Cir. 2026). Thus, pleadings "that fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis" fail under Rule 8. *Id.* at 1290. Importantly, "district courts do not have to accept such shotgun pleadings. It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Id.* at 1289.

Here, because Anaya is self-represented, the Court must construe the pleadings liberally and afford him the benefit of the doubt. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). However, Anaya's self-represented status does not relieve Anaya of conformity to the pleading

United States District Court
Northern District of California

rules. *See, e.g.*, *Romano v. U.S. Army Core of Eng'rs*, No. 3:17-cv-00930-JD, 2017 WL 6448221, at *1 (N.D. Cal. Dec. 18, 2017).

In the FAC, Anaya asserts multiple claims against multiple defendants, but he does not set forth a short and plain statement showing how *each defendant* is liable for each claim. *See* FAC ¶¶ 50–71, 76–78. Blanket allegations that some defendants assisted the others to perform alleged violations are not sufficiently specific to place the defendants on notice of the allegations against them. A plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up).

As currently pled, most County Defendants would not know where to begin in responding to Anaya's claims because the claims do not allege how *each defendant* is liable. *See, e.g.,* Mot. at 5:9–10 ("The FAC's claims do not connect any individual Defendant's conduct to the elements of a constitutional violation."); *Gibson*, 165 F.4th at 1288 (explaining "a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" is a type of shotgun pleading that forecloses meaningful response by the opposing party). Specifically, Claims 1–5 and 7 are deficient under Rule 8. In short, Anaya must specify *how* each County Defendant is liable for each claim.

First, Claim 1 mentions Napa County in the allegations but does not mention any other County Defendant. FAC ¶¶ 50–55. Anaya must explain how each County Defendant—not just Napa County—is liable for this claim.

Second, Claim 2 does not mention any of the County Defendants by name but only vaguely references "County officials." FAC ¶¶ 56–59. Similarly, Claim 3 does not describe what any County Defendant did and states that Anaya "will identify each defendant's knowledge, action, causation, and injury." FAC ¶¶ 60–63. But Rule 8 does not permit Anaya to allege that he will plead defendant's conduct at a later date. Mot. at 1:3–11.

Third, Claims 4 and 7 allege that "County Defendants" and "certain County Defendants," respectively, took certain actions. FAC ¶¶ 64–67, 76–78. Again, Anaya must specify each defendant's role in each alleged wrong.

United States District Court
Northern District of California

Finally, Claim 5 alleges that "officials" took certain actions and that "Quiroz and Vosmeier" took certain actions. FAC ¶¶ 68–71. It also states that Anaya "will identify the relevant sensitive material, recipient, notice, affirmative act, causal mechanism, and risk through a controlled procedure." *Id.* But again, Anaya cannot satisfy Rule 8 through promises of future pleading.

In sum, to comply with Rule 8's pleading requirement, Anaya must amend the complaint to allege: (1) the specific laws or rights that you think the County Defendant(s) violated; (2) for each law or right, state the specific factual allegations that connect each County Defendant with the alleged wrongdoing, including the dates, the names of people involved, and what those people did to you; (3) how you were harmed; and (4) what relief you seek. Anaya is advised that it is not enough to state he "incorporates all preceding paragraphs" at the start of each cause of action. Alternatively, Anaya may amend his complaint to remove claims against some County Defendants.

**b. Title II ADA: County Services And Meaningful Access Claim (Claim 1)**

The remaining question is whether Anaya alleges a cognizable claim against Napa County under Title II of the ADA. Anaya alleges that Napa County denied him "meaningful access" to County services "or failed to provide an effective reasonable modification." FAC ¶¶ 50–55. The County Defendants argue that Claim 1 fails against Napa County because Anaya (1) fails to plead a theory of disparate treatment, disparate impact, or failure to accommodate; and (2) does not plausibly allege deliberate indifference as required for damages.[6] Mot. at 9:18–11:19.

ADA Title II prohibits public entities from discriminating against people with disabilities by denying them access to or participation in that entity's benefits, services, and programs. *See* ADA Title II, 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

---

[6] The County Defendants further argue that the request for emotional-distress damages should be dismissed as barred under Title II. Mot. at 11:11–19. In his Opposition, Anaya states that he "narrows his remedy demand: no emotional-distress damages under Section 504 or Title II." Opp. at 14:23–24. Anaya thus waives his emotional-distress damages claim under either statute. Reply at 14:1–5.

programs, or activities of a public entity, or be subjected to discrimination by any such entity."). To establish a claim under the ADA, a plaintiff "must show: (1) he is a qualified individual with a disability; (2) he was denied a reasonable accommodation that he needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit . . . is a public entity." *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 968–69 (9th Cir. 2021) (cleaned up).

If a plaintiff seeks damages under Title II, he must also prove "intentional discrimination" by showing either discriminatory animus or deliberate indifference. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016). In the Ninth Circuit, a plaintiff only satisfies this *mens rea* requirement by meeting the standard for deliberate indifference. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). On the first element, notice may be established where the plaintiff "alerted the public entity to his need for accommodation" or "where the need for accommodation is obvious, or required by statute or regulation." *Id.* To meet the second element, "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

Here, the Court concludes that Anaya fails to state a cognizable claim against Napa County under Title II of the ADA. First, Anaya fails to plead a cognizable theory of discrimination. *See Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) ("A disability discrimination claim may be based on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.") (cleaned up). Anaya asserts that he brings the Title II claim under a failure to accommodate theory. Opp. at 13:10–15:16. Under that theory, Anaya can satisfy the reasonable accommodation element by showing the County "wrongly denied an accommodation request or failed to comply with a binding regulation." *Csutoras*, 12 F.4th at 969. Anaya does neither. Although Anaya alleges he filed an ADA grievance regarding access to County services and that the County's offered alternatives were inadequate for his needs, he does not allege that he requested certain accommodations for his

disability and does not explain how the County's alternatives failed to accommodate his disability. FAC ¶¶ 43–44; *see* Reply at 9:1–16. Therefore, Anaya fails to plead a plausible reasonable accommodation claim. *See Payan*, 11 F.4th at 738 (explaining that reasonable accommodation claim requires showing that public entity denied an accommodation based on an individualized request or need, resulting in the denial of meaningful access to public services to person with disability).

Second, Anaya fails to plead the requisite deliberate indifference for damages. Anaya seeks damages against Napa County "only to the extent legally available and supported by proof of deliberate indifference, actual injury, and causation." FAC ¶ 55. But Anaya does not allege facts "showing the County knew its alternatives were inadequate for a particular disability-related need and failed to act." Reply at 9:17–27. This is fatal to a claim for damages.

**2. Claims Against Only Napa County (Claims 6 And 8)**

Anaya brings Claims 6 (Municipal Liability) and 8 (Section 504 of the Rehabilitation Act) against only the County of Napa. FAC at 14–15.

**a. Municipal Liability Claim (Claim 6)**

Anaya alleges that Napa County, through its practices, improperly denied Anaya access to County services. FAC ¶¶ 72–75. The County Defendants argue that Claim 6 fails because Anaya does not plead a cognizable *Monell* claim. Mot. at 16:10–17:8. Anaya "requests leave to supply an actual delegation or knowledgeable approval of both the [security] decision and its unconstitutional basis, if supportable." Opp. at 21:21–22:4.

Under *Monell*, local government units are "persons" for purposes of 42 U.S.C. § 1983 ("Section 1983"). *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 62 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 563 U.S. 658, 690 (1978)). A municipality may face Section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 563 U.S. at 692).

Here, the Court concludes that Anaya fails to state a cognizable *Monell* claim against Napa County. The County Defendants argue that Anaya fails to plead an underlying constitutional

violation as required for a *Monell* claim. Mot. at 16:10–17; *see Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (explaining *Monell* claim requires that plaintiff prove he "possessed a constitutional right of which he was deprived") (cleaned up). The Court agrees. While Anaya "incorporates" preceding paragraphs into his *Monell* claim, he does not specify how Napa County violated his constitutional rights. FAC ¶ 72. Moreover, as discussed, Anaya's Section 1983 claims are not plausible as pled. Therefore, Anaya fails to plead a necessary element of his *Monell* claim.

Accordingly, the Court **GRANTS** the County Defendants' motion to dismiss Claim 6 against Napa County under Rule 12(b)(6).

**b. Section 504 Of The Rehabilitation Act Claim (Claim 8)**

Anaya alleges that Napa County "denied meaningful access to federally assisted programs and activities" and "failed to provide reasonable modifications and an accessible process necessary for meaningful access." FAC at 15–17.[7] The County Defendants argue that Claim 8 fails against Napa County because Anaya (1) fails to plead a theory of disparate treatment, disparate impact, or failure to accommodate; and (2) does not plausibly allege deliberate indifference as required for damages. Mot. at 9:18–11:19.

Like the ADA, Rehabilitation Act Section 504 ("Section 504") prohibits public entities from discriminating against people with disabilities by denying them access to or participation in that entity's benefits, services, and programs. *See* Rehabilitation Act § 504, 29 U.S.C. § 794 ("[N]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). "Because there is no significant difference in the analysis of rights and obligations created by the ADA and the Rehabilitation Act," courts "collectively address the claims under both statutes." *Csutoras*, 12 F.4th at 969 n.11 (cleaned up).[8] Thus, the Court analyzes Anaya's Section 504 clam using the

---

[7] Anaya does not include numbered paragraphs in his claim under Rehabilitation Act Section 504.

[8] "The few differences between the two—jurisdictional requirements, the causal standard for liability, the entity with regulatory responsibility, and the consistency across regulations—are not

United States District Court
Northern District of California

ADA framework discussed above. *See supra*, Part IV.B.1.b.

Here, the Court concludes that Anaya fails to state a cognizable claim against Napa County under Section 504 for the same reasons his claim under Title II fails: he fails to plead a cognizable theory of discrimination, and he fails to plead the requisite deliberate indifference for damages. *See id.*; Reply at 9:1–24.

Accordingly, the Court **GRANTS** the County Defendants' motion to dismiss Claim 8 against Napa County under Rule 12(b)(6).

### C. Leave To Amend

The County Defendants argue that further leave to amend should be denied because Anaya cannot plead missing facts as the FAC "states that the facts will come from discovery." Mot. at 18:14–19:2. Anaya responds that that he should be granted leave to cure any pleading deficiencies. Opp. at 40:1–18.

Here, given Anaya's self-represented status and because it is not clear that the deficiencies of the FAC could not be cured by amendment, the Court thinks Anaya should be given one more opportunity to amend his complaint. Anaya asserts that he can amend the complaint to supply a dated chronology, separately identify defendants and capacities, add the Virginia litigation as a specific tolling ground, narrow remedies, and distinguish County administrative acts from protected litigation advocacy. Opp. at 6:15–18.

In the FAC, Anaya seeks to allege facts through *in camera* review. FAC ¶ 49. Similarly, in his Opposition, Anaya requests protected procedures for presenting facts, including through sealing and *in camera* review. *E.g.,* Opp. at 23:5–6, 26:1–27:4, 40:20–41:20. Anaya should file an appropriate sealing motion or request for *in camera* review should he desire such procedures. *See id.* at 41:4–6 (citing Fed. R. Civ. P. 5.2, 26(c)); *see also* Civ. L.R. 79-5 (Filing Documents Under Seal in Civil Cases).

Accordingly, the Court **GRANTS** Anaya leave to amend the claims against the County

---

implicated here." *Csutoras*, 12 F.4th at 969 n.11 (internal citation omitted).

Defendants to address the deficiencies identified in this Order.[9] The Court does not grant Anaya leave to add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies or as expressly permitted by this Order.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the County Defendants' Motion to Dismiss. Anaya may file an amended complaint consistent with this Order by December 3, 2026.

### A. Requirements for Amended Complaint

The Court advises Anaya that an amended complaint replaces a prior complaint, meaning the prior complaint is treated as non-existent. *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). This means the amended complaint must include all the facts, claims, and defendants that are to be considered by the Court, and the amended complaint may not incorporate any part of the original complaint by reference. *See* Civ. L.R. 15-1. The Court will not consider exhibits attached to the original complaint unless they are attached to the amended complaint.

In addition, any amended complaint must include the following sections:

**Caption Page**
On the first page, list the names of the defendant(s), the case number used in this order (26-cv-7988-TSH), the title ("SECOND AMENDED COMPLAINT"), and write "Demand for Jury Trial" if you want your case to be heard by a jury.

**Form of Pleadings**
The factual allegations and claims must be written in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

**Subject Matter Jurisdiction**
The first numbered paragraph in your complaint (labeled "Jurisdiction") should explain why this Court has the power to decide this kind of case. A federal court can hear a case based on a federal question jurisdiction (a violation of federal law under 28 U.S.C. § 1331) or diversity jurisdiction (when all plaintiffs and all defendants are citizens of different states disputing more than $75,000) under 28 U.S.C. § 1332.

**Parties**
In separate paragraphs for each party, identify the plaintiff(s) and

[9] Because the Court grants Anaya leave to amend, the Court **DENIES** as moot Anaya's motion in the alternative for leave to amend the complaint. Opp. at 40:1–18. The Court also **DENIES** as moot Anaya's motion at ECF No. 23 for leave to file an amended complaint.

United States District Court
Northern District of California

defendant(s) in the case.

**Statement of Facts**
Explain the important facts in numbered paragraphs, describing how the defendant(s) violated the law and how you have been injured. If any document is attached to the amended complaint, Plaintiff must explain in the numbered factual allegations what the document is alleged to show and how it relates to a particular defendant and claim.

**Claims**
For each claim, include a separate heading identifying the specific law allegedly violated. Under each heading, state in separately numbered paragraphs the facts supporting that claim, including what each defendant did, when the conduct occurred, the names of the persons involved, how each defendant's actions violated the identified law, and how those actions harmed you.

Anaya should note that although leave to amend has been granted, it is not for the purposes of adding new claims or defendants, other than as requested by the Court. Anaya should focus the amended complaint on claims and defendant(s) relating solely to issues discussed herein.

**B. Assistance for Self-Represented Litigants**

The Court advises Anaya that free legal help is available through the Northern District of California's Legal Help Centers, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco. Anaya may request an appointment by emailing fedpro@sfbar.org or calling 415-782-8982. At the Legal Help Center, you will be able to speak with an attorney who may be able to provide basic legal help but not representation. More information is available at https://cand.uscourts.gov/representing-yourself/free-legal-help-people-without-lawyers.

Anaya may also wish to obtain a copy of this District's *Handbook for Litigants Without a Lawyer*, which provides instructions on how to proceed at every stage of your case. The handbook is available in person at the Clerk's Office and online at: http://cand.uscourts.gov/prosehandbook.

**IT IS SO ORDERED.**

Dated: November 3, 2026

THOMAS S. HIXSON
United States Magistrate Judge